JOHN VAN VECHTEN, Respondent, *v.* JOHN GRIFFITHS *et al.*, Appellants.

Proceedings *in rem* against a vessel for the price of coal furnished her determine no question of ownership of the vessel; and, consequently, are not admissible as evidence for the purpose of proving ownership.

Counsel desiring the court to instruct the jury as to a particular proposition, not making the proposition clear and intelligible, cannot complain if the instruction is refused.

THIS is an action brought to recover damages for the alleged conversion of a quantity of coal, the property of the plaintiff. Griffiths was the sheriff of Ulster county. The defendant, Lefever, was a judgment creditor of one N. Elmendorf, and the defendant Schoonmaker was a co-defendant in another judgment with said Elmendorf, recovered in favor of one Styles. It was under these two judgments, that the coal in question was levied on, as the property of Elmendorf, by Griffith, the sheriff, under the directions of the other defendants.

Upon the trial, the plaintiff called one Morey as a witness, to testify as to the ownership of the coal, who testified that in 1855, he was running the steamboat Alida from Rondout to New York, under the plaintiff Van Vechten. That he was acting as agent of the plaintiff and for him, *and bought the coal for the plaintiff*. Before July, 1854, he had acted as agent of Elmendorf in running the boat Alida, Elmendorf having been former owner. The boat was sold in July, 1854, when the plaintiff bought it, and hired the witness to go on as his agent, the same as before. The sheriff was ordered to sell the coal in question by Lefever & Westbrook, Westbrook acting for Schoonmaker. It came out on the trial, under an objection from the defendants, that the Styles judgment (the amount of it) was paid to Styles, by the check of the defendant, Schoonmaker, but that it was not his money that paid it, but the money of Cornelia Schoonmaker, who paid the amount and took an assignment of the judgment.

After this testimony had been given, the defendants offered to show by same witness an agreement between him and Elmendorf, by which the latter had agreed for a valuable consideration to assume the payment of the debt upon which this judgment was recovered, and indemnify Schoonmaker from all liability upon it. Under objection, the offer was rejected, and the defendant excepted. Sykes, Van Wagoner and Morey, testified that this coal was never delivered on board the Alida under the contract received in evidence, but upon the pledge for the payment thereof, made by Morey, Robert Van Wagoner and Josiah Dubois, Van Wagoner averring that what was called the *contract*, they had refused to carry out. The defendants offered in evidence an exemplified copy of the proceedings in the United States District Court, against the steamboat Alida, upon the libel of the Delaware and Hudson Canal Company, to obtain judgment for the coal in question, and the decree of the court in the case—which offer, under the objection of the plaintiff, was rejected. It appearing that Elmendorf had negotiated to raise some money for the plaintiff, and had obtained from a firm in New York (Mills & Thompson) three notes, for which they were secured by a mortgage on the Alida, the defendant offered to show that upon a trial in New York, in an action brought to foreclose the mortgage, it had been held usurious and was not paid, which evidence, under plaintiff's objection, was rejected.

The court, among other things, charged the jury that "if Morey is to be credited there can be but little doubt, that he both run the boat and purchased the coal as the agent of the plaintiff, and for the plaintiff." Exception by defendant. Several other exceptions were taken by the defendant to the judge's charge, and to the judge's refusal to charge, which will be noticed in the opinion of the court. The jury found a verdict for plaintiff for $582 damages, and the court ordered the case and exception to be heard at a General Term in first instance, all proceedings on the verdict to be in the mean time stayed. The General Term heard the case, and ordered judgment for the plaintiff to be entered on the

14

verdict. Judgment in pursuance of order of General Term, was, January 10, 1860, duly entered in Ulster county clerk's office, for $850.02, damages and costs. From the above judgment so entered, the defendants appealed to this court.

*L. Tremain,* for the plaintiff (respondent).

*John H. Reynolds,* for the defendants (appellants).

HOGEBOOM, J. Most of the propositions in the judge's charge to the jury on which the appellants' counsel founds his allegations of error are manifestly comments upon the facts of the case, or expressions of opinion in regard thereto, and are not the subject of exception, and the remedy is not to except thereto, but to call the attention of the judge to them, and ask for fuller explanations in regard thereto, or demand their submission to the jury as questions of fact.

Of this nature is the remark that there was no evidence of any collusion between the plaintiff and Elmendorf in regard to the purchase of the Alida; also, the remark that the $9,000 and the proceeds of the stock of the State of New York Bank and Huguenot Bank, were all the moneys shown to have belonged to Elmendorf, or to have been advanced by him to the plaintiff; and also the remark that if Morey was to be credited, there could be but little doubt that he both run the boat and purchased the coal as the agent of the plaintiff. ·

The only points in regard to which I have had any hesitation was the refusal to comply with the defendants' request to charge in a single particular, and the rejection of a single offer of evidence. The defendants requested the court to charge that although Morey supposed he was acting as the agent of Van Vechten, yet if Elmendorf was the man standing back, and Van Vechten was his agent, then Morey's supposition as to the party for whom he was acting made no difference. The court refused to charge in this form, and the defendants' counsel excepted. I think on the whole such refusal was proper, for the following reasons:

1st. It was not in itself quite clear and intelligible. It probably was intended to say that if Elmendorf was the real

principal of Van Vechten, who was the apparent principal of Morey, Morey's ignorance of that fact, and supposition that Van Vechten was the real and ultimate principal, would not prejudice the defendants' right to go back to the real, though remote principal in the transaction. But the idea was not very clearly conveyed by the language used.

2d. The court had already charged that if Morey was acting as agent for Elmendorf, they must find for the defendants. This embraced the substance of the instruction asked — not in the precise words proposed — but in legal effect. And it is not to be supposed that the counsel had neglected to present the application of this principle in all its various phases to the jury, or that the court would have refused a more detailed exposition of it to the jury if it had been properly and intelligibly requested.

The defendants' counsel also offered to prove that the debt in the Styles judgment was in fact, by an agreement for a valuable consideration, entered into between Elmendorf and Schoonmaker, the debt of Elmendorf to pay, and had been assumed by the latter. This evidence was twice offered and twice rejected by the court, and the defendants excepted. I adhere to the opinion I entertained when the case was in the Supreme Court, that this was error. Schoonmaker justified under the Styles judgment, and as he was a defendant therein, and had moreover, by his own check, paid the same when it was assigned to his mother, Cornelia Schoonmaker, it became necessary, in order to show that the judgment was still in life and not extinguished, to prove either that the assignment was a *bona fide* one to the latter, paid for with her money, or taken in her name, though for the benefit of Marius Schoonmaker, in order to enable him to collect its amount of the party (Elmendorf) really and primarily liable to pay. Having this object, the testimony was, in my opinion, proper, and should have been admitted. But a suggestion is now made which was not presented in the Supreme Court, that although this may have been technically erroneous it worked no practical prejudice in the final result to Schoonmaker, as the defendants justified under another judgment—that of Lefever

—wholly unimpeached, and inasmuch as the jury rendered a general verdict in favor of the plaintiff against all the defendants including Lefever, it must have been founded upon the fact ascertained by the jury and declared by their verdict that the coal which was the subject of the controversy was the property of Van Vechten, and not of Elmendorf, at the time of the levy and sale under the judgments and executions. On reflection I regard this as a satisfactory answer to the argument based on the rejected evidence. I am not able to see that Schoonmaker has been prejudiced by its erroneous exclusion, and I therefore assent to the *affirmance* of the judgment of the court below.

DAVIES, J. This is an action of trespass against the defendants, for taking and converting to their own use a quantity of coal, which the plaintiff claimed as his property. The defendants claimed that the coal was the property of one Nicholas Elmendorf, and they justified the taking of the coal by virtue of a sheriff's sale to them on executions issued on judgments against Elmendorf. The main point in controversy upon the trial was whether, at the time of the sheriff's sale, the coal was the property of the plaintiff or that of Elmendorf. The verdict of the jury affirms that it was the property of the plaintiff, and if there has been no error in the admission or rejection of evidence, or in the charge made or refusal to charge, that verdict must stand, and the fact affirmed by it be regarded as established. On the 17th July, 1854, John Van Vechten claimed to have become the owner of the steamboat Alida, by virtue of a sheriff's sale to him upon executions issued upon judgments against Nicholas Elmendorf and others. Elmendorf had theretofore been the acknowledged owner of the boat. While such owner, and in the spring of 1854, he had made a contract with the Delaware and Hudson Canal Company to supply the boat with coal. After the purchase of the boat by the plaintiff he employed one Morey to run the boat for him and on his account; and Morey testified that he purchased this coal of the Delaware and Hudson Canal Company for the plaintiff.

That he was authorized to purchase for the plaintiff, and on his account, what the boat needed. The defendants claimed that the sale of the steamboat to the plaintiff was collusive. That in fact Elmendorf was the purchaser, and that he furnished the money paid for her, and was in truth the bidder at the sheriff's sale. Evidence was given tending to show that Elmendorf advanced money to Van Vechten, at about the time of the sale; that Van Vechten was his father-in-law, and that Elmendorf, after the sale, interfered in the affairs of the boat. Upon the trial, the plaintiff sought to establish that one of the judgments upon which the sheriff sold had been paid and extinguished at the time of the sale. This was a judgment in favor of William H. Styles against Elmendorf, Marius Schoonmaker and William Masten, and which Schoonmaker procured to be assigned to Cornelia E. Schoonmaker, his mother. He testified that the assignment was for his benefit, as he did not want his property sold under the judgment; that it was not his money that was paid for the assignment, but that of his mother; and the defendants offered to show that before the judgment was rendered, by an arrangement between Elmendorf and Schoonmaker, Elmendorf had assumed to pay and save Schoonmaker harmless from this very debt. This evidence was objected to by the plaintiff as irrelevant and improper, and excluded by the judge, and an exception taken. The counsel for the defendants also offered in evidence an exemplified copy of the records of the proceedings of the United States District Court of the Southern District of New York, upon the trial of the Delaware and Hudson Canal Company against the steamboat Alida for the condemnation and sale of the vessel, her tackle, etc., to pay the amount due the libellant for the coal in controversy, with interest and cost, and the judgment and decree of the court thereon, which was objected to by the counsel for the plaintiff, and the same was excluded by the judge, and an exception taken. In charging the jury the judge, among other things, said, " If Morey is to be credited there can be but little doubt that he both run the boat and purchased the coal as the agent of the plaintiff and for the

plaintiff." This portion of the charge was excepted to by the counsel for the defendants. He also stated to the jury that there was no evidence of any collusion between the plaintiff and Elmendorf in regard to the purchase of the steamboat; and he also stated to the jury, that the $9,000 and the proceeds of the State of New York bank stock and the Huguenot Bank stock were all the moneys shown to have been Elmendorf's, or advanced by him to the plaintiff, or in regard to which there is any proof that it was Elmendorf's; and that the proof of these facts was not at all important, except as bearing on the question of ownership, and that the Alida was run for Elmendorf and not for Van Vechten; to which several portions of the charge the defendants' counsel also excepted. The judge further charged the jury that, if the jury were satisfied that Morey was acting as agent for Elmendorf [though he swears otherwise] then they must find for the defendants. To the remark in brackets, "though he swears otherwise," the defendants' counsel excepted. The counsel for the defendants requested the judge to charge the jury: "That, although Morey supposed he was acting as the agent of Van Vechten, yet if Elmendorf was the man standing back, and Van Vechten was his agent, then Morey's supposition, as to the party for whom he was acting, made no difference." The judge refused so to charge, and the defendants' counsel excepted.

The inquiry as to the arrangement between Schoonmaker and Elmendorf, was wholly immaterial upon the issue submitted to the jury, and passed upon by them, namely, whether or not Van Vechten was the owner of the coal levied upon and sold by the defendants as the property of Elmendorf. They only needed the judgments and executions against Elmendorf as a protection and justification in seizing and taking his property. The judgment could not in any sense be said to justify the taking of the plaintiff's property. Until that issue (the only one submitted to the jury) had been found adversely to the plaintiff, did the inquiry become at all material, in reference to this or any other judgment against Elmendorf. If the coal was the property of the

plaintiff, the defendants then make it trespassing, and it is immaterial whether they took it under cover of judgment and execution, and sales therein, or how otherwise, and it is equally immaterial whether such judgments were pretended or real, paid or valid. In any event they could furnish no justification or excuse for taking and selling the plaintiff's property. It was of no importance, therefore, whether the agreement inquired about existed or not. It could only have been material in the event that the jury had found that the coal was the property of Elmendorf, and the defendants were seeking to justify themselves for taking and converting his property. No question was made as to the Lefever judgment. That was a valid and subsisting judgment, and if the coal was the property of Elmendorf, the levy under the execution issued upon it, and the sales by virtue thereof, divested Elmendorf of all rights and title in the coal, and vested the same in the defendants, the purchasers at the sale. This made their title and justification upon this hypothesis complete, and they had no occasion to strengthen it by invoking the aid of the other judgment. It was assumed by the charge that the defendants had good title to the coal, and were justified in taking it, provided it was not the property of this plaintiff, and the issue was narrowed down between the parties to that simple question. The defendants could have sustained no injury by the exclusion of the offered evidence. Each of the defendants in his answer claims that the coal, at the time of the sale, was the property of Elmendorf, and in his possession, and the defendant Schoonmaker admits that he was one of the purchasers thereof at said sale, and claims title thereto by virtue of said sale. He could not, therefore, fail in his defense, even if the Styles judgment had no existence, provided the defendants had established on the trial that the coal was the property of Elmendorf. To this end the defendants offered in evidence the proceedings in the district court of the United States, whereby it appeared that the steamer Alida had been libeled, by the vendors of this coal, to recover the amount thereof, and that the vessel had been condemned for the coal,

with costs, etc. This was a proceeding *in rem* against the vessel, which was liable for the coal furnished her, whoever might have been the owner of the vessel or the owner of the coal. The proceedings determined no question as to such ownership, and could have no relevancy in arriving at a solution of that question. If the statement of Morey be true, that he purchased the coal for the plaintiff, and upon his credit, then the plaintiff became the owner of it, and he was also liable to the vendors for the price thereof, as well as the vessel for which it was provided. The plaintiff was the owner of the boat, unless there was collusion between him and Elmendorf. The defendants did not ask that question to be submitted to the jury, and if it had been, and they had found that the sale of the boat to the plaintiff was collusive, and that, in fact, it still remained the property of Elmendorf, there was no evidence given upon the trial to sustain such a finding. If the boat was the property of the plaintiff, then the condemnation and sale thereof to pay for the coal, would only show that he had paid for the coal, as he had agreed to do, when he purchased it. That he had but discharged a debt due by him, and this tended in no degree to establish the position that the coal was the property of Elmendorf. The evidence was properly excluded.

I am unable to see anything objectionable in the first portion of the charge, objected to by the defendants' counsel. In it, the judge states, that if Morey is to be believed, there is little doubt, that both run the boat, and acted as the agent of the plaintiff, in the purchase of the coal. Morey's testimony was not sought to be impeached directly, but circumstances were adduced by the defendants, by which they sought to maintain that Morey, in running the boat, and making the purchase of the coal, acted as the agent of Elmendorf. His positive statement under oath, was that in making the purchase, and running the boat, he acted as plaintiff's agent. It was the duty of the judge thereupon, to have called the attention of the jury to this positive statement of the witness, to rebut the defendants' theory, and if his testimony was credited, it effectually demolished it. It was no error on the part of

the judge, to say so to the jury. The judge was undoubtedly correct in stating to the jury, that the proof of the facts, in regard to the collusion alleged between the plaintiff and Elmendorf, in relation to the purchase of the boat, or in regard to the moneys advanced by Elmendorf to the plaintiff, and that the Alida was run for Elmendorf, and not the plaintiff, were only important as bearing on the question of ownership — that is, the question of the ownership of the coal. That was the only question at issue, and the circumstances alluded to had no significance, except as bearing upon that question. If the defendants wished any question submitted to the jury, on the subject of the collusion or of the moneys advanced by Elmendorf, or as to Morey being his agent, the judge should have been specially requested to submit such questions, and if he had refused, an exception could have been taken. If such refusal had been error, the exception would have been available. (*Fraser* v. *Stellwagen*, 15 N. Y., 315; *Plumb* v. *Cattaraugus County Ins. Co.*, 18 N. Y., 392; *Winchell* v. *Hicks*, id., 558.) There was no error in the judge stating to the jury in his directions to them to find a verdict for defendants, if they found that Morey was acting as the agent of Elmendorf in the purchase of the coal, that Morey had sworn otherwise. It was not withdrawing from them the decision of the question, whose agent he was, but calling their attention to the fact, when they were weighing all the circumstances bearing on that point, to the testimony of Morey himself. It was positive and unequivocal, and his testimony was not sought to be impeached. It was a controlling fact in the cause, and it was the right of the plaintiff, to have it placed properly before the jury. The jury were not told to give it any undue weight, but to take into consideration, when discussing this point, what Morey had sworn to. It is difficult to see how the judge could have more impartially or candidly referred to the conflicting testimony in the case. He properly left all the facts and circumstances to the jury, for them to draw such inference, as they, in their judgment, should determine. The Supreme Court, saw no reasons for disturbing their verdict on the main question, controverted on the trial, and it is not

the province of this court, finding no error to have been committed on the trial, to review or interfere with the verdict of the jury upon the facts.

The judgment should be affirmed.

All concur.

Affirmed.